SKAPIK LAW GROUP
Mark J. Skapik (SBN 164957)
Geralyn L. Skapik (SBN 145055)
Blair J. Berkley (SBN 222293)
Matthew T. Falkenstein (SBN 333302)
Roxanne A. Markus (SBN 362400)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 398-4404
Facsimile: (909) 398-1883
mskapik@skapiklaw.com
gskapik@skapiklaw.com
bberkley@skapiklaw.com
mfalkenstein@skapiklaw.com
rmarkus@skapiklaw.com

SOUTHERN CALIFORNIA LAWYERS GROUP
Eric C. Morris (SBN 243425)
5861 Pine Avenue, Suite A-1
Chino Hills, California 91709
Telephone: (909) 466-4400

Attorneys for Plaintiff
SAMUEL DAVID PEREZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| SAMUEL DAVID PEREZ, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> COUNTY OF ORANGE, a legal subdivision of the State of California; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br> 1. Failure to provide medical care [42 U.S.C. § 1983] <br> 2. *Monell*—policy of providing no dental care [42 U.S.C. § 1983] <br> 3. *Monell*—policy of inaction [42 U.S.C. § 1983] <br> 4. Failure to summon medical care [Cal. Government Code § 845.6] <br> 5. Failure to perform required safety checks [42 U.S.C. § 1983] <br> 6. Negligence <br> 7. Bane Act [Cal. Civil Code § 52.1] <br><br> **DEMAND FOR JURY TRIAL** |

- 1 -
COMPLAINT

Plaintiff Samuel David Perez ("Plaintiff") alleges as follows:

**PARTIES**

1. Plaintiff is an individual and resident of the City of Cypress, County of Orange, California. He was born on October 29, 1964.

2. Defendant County of Orange ("COUNTY") is a political subdivision of the State of California.

3. The COUNTY Sheriff's Department operates the Men's Central Jail ("CENTRAL") at 44 Civic Center Plaza, Santa Ana, California 92703.

4. Defendant DOES 1-20 are COUNTY Sheriff's deputies, custodial staff, and members of the COUNTY's Correctional Health Services ("CHS") who worked at the CENTRAL jail from January through March 21, 2024. When the true identities of DOES 1 through 20 are determined, Plaintiff will amend this Complaint.

5. Don Barnes ("BARNES") is the COUNTY Sheriff.

6. Chad Taylor ("TAYLOR") is the Commander of CENTRAL.

**JURISDICTION AND VENUE**

7. The Court has jurisdiction over Plaintiff's Title 42, United States Code, section 1983 and 1988 claims pursuant to Title 28 U.S.C. sections 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's state-law claims.

**PRESENTATION OF WRITTEN CLAIM**

8. On August 30, 2024, counsel for Plaintiff served a Claim For Money or Damages Against the COUNTY ("Claim") pursuant to California *Government Code* sections 910-915.4. On September 4, 2024, Plaintiff's counsel received an acknowledgment from the COUNTY Office of Risk Management that COUNTY received the Claim. On March 5, 2025, COUNTY served notice that rejected Plaintiff's Claim.

///

///

**GENERAL ALLEGATIONS**

9.     In January 2024, Plaintiff was on parole and arrested for missing appointments with his probation officer.  He was taken to the CENTRAL Jail in Santa Ana.

10.     Over the period January through February 2024, Plaintiff suffered increasing oral, dental, and head pain caused by a dental abscess and infection.  He made multiple written and oral requests for medical and dental care over this period, but the nurses from Correctional Health Services ("CHS") refused these requests on the ground that, consistent with the COUNTY policy of providing *no* dental care in the jails, the COUNTY did not fund dental care.  The nurses refused numerous requests to treat Plaintiff's dental abscess and to refer Plaintiff to physician or dentist.

11.     In or about February 2024, Plaintiff's dental abscess began to drain pus into his mouth, causing a foul odor that was noticeable to all, including other inmates.

12.     By March 2024, the abscess and infection were causing Plaintiff debilitating head aches and dizziness.  As a result, Plaintiff missed numerous days at the cafeteria where he worked as a server.  He was called into the kitchen office three times for missing work, and he explained that he was dizzy and did not feel well.

13.     Plaintiff's dental and head pain radiated to his ears.  In response to his complaints of severe head and ear pain, a CHS nurse prescribed Plaintiff a two-week regimen of ear drops.

14.     Plaintiff continued to make written requests in March 2024 for medical and dental care, but the CHS nurses repeatedly told him that the COUNTY has no funding for dental care.  Plaintiff argued that his "dental" problem had become a serious medical condition requiring immediate care.

15.     As March progressed, Plaintiff's dizziness became so severe that the deputies and custodial staff in Plaintiff's housing unit held onto his arm to prevent him from falling.

16. On one occasion, Plaintiff fell while in the shower and in the presence of Defendant deputies DOES 11-12. Plaintiff told the deputies that he did not feel well. Instead of summoning medical care, DOES 11-12 told Plaintiff that he needed to go to work (in the cafeteria) or be fired.

17. In the middle of March, the debilitating pain caused Plaintiff to became desperate. He submitted three written requests for medical and dental care in a single day. The CHS nurses continued to respond that there was no funding for dental care.

18. The dizziness, and then confusion, became so severe in mid March that Plaintiff had difficulty finding his bunk. Although Defendant deputies DOES 11-20 in Plaintiff's housing unit observed that he was having difficulty finding his bunk, none of these deputies reported his dizziness and confusion to CHS.

19. On or about March 19, 2024, Plaintiff collapsed onto the floor and lost consciousness. The inmates nearby summoned two deputies. The deputies put Plaintiff into a wheelchair and took him to a medical station. The CHS staff at the medical station refused to treat Plaintiff.

20. March 19 is the last day at CENTRAL that Plaintiff remembers. Plaintiff is informed and believes and thereon alleges that he laid unconscious in his cell from late March 19 into March 21.

21. Plaintiff is informed and believes and thereon alleges that on or about March 21, 2024, he was taken to the Emergency Department at the University of California, Irvine Medical Center.

22. Plaintiff is informed and believes and thereon alleges that at the UCI Medical Center, the physicians discovered that the untreated dental abscess and

COMPLAINT

infection had caused a thalamic (brain) abscess through the process of hematogenous spread.[1]

23.    On or about March 21, 2024, Plaintiff underwent an emergency right frontal craniotomy to install a ventriculostomy catheter to drain the thalamic abscess.[2]

24.    Following the surgery, Plaintiff was admitted to the Intensive Care Unit at UCI Medical Center.

25.    As a proximate result of the thalamic abscess, Plaintiff suffered encephalomalacia (loss of brain tissue) at the right thalamus.  As a result, Plaintiff is paralyzed on the left side of his body, his left hand no longer functions, and he has no feeling at the bottom of both legs.

## I.

### FIRST CAUSE OF ACTION

### VIOLATION OF FOURTEENTH AMENDMENT—

### FAILURE TO PROVIDE MEDICAL CARE

### [42 U.S.C. § 1983]

(By Plaintiff Against DOES 1-10)

26.    Plaintiff incorporates by reference paragraphs 1-25 as though fully set forth herein.

27.    In January 2024, Plaintiff was on parole and arrested for missing appointments with his probation officer.  He was taken to the CENTRAL jail in Santa Ana.

28.    As a pretrail detainee, Plaintiff had a Fourteenth Amendment right to adequate medical treatment while incarcerated at the CENTRAL jail.

---

[1] The *thalamus* is a large, egg-shaped structure located in the center of the brain. It plays a crucial role in processing and relaying sensory and motor information throughout the body.

[2] A *craniotomy* removes a section of the skull to access the brain.

29. In January and February 2024, Plaintiff suffered increasing oral and head pain caused by a dental abscess and infection. He made multiple written and oral requests for medical and dental care over this period.

30. Defendant DOES 1-10 (COUNTY CHS nurses responsible for Plaintiff's health care) were aware that Plaintiff was suffering a dental abscess and bacterial infection.

31. Nevertheless, with deliberate indifference to Plaintiff's condition, DOES 1-10 made the decision to provide Plaintiff no dental care, consistent with the COUNTY's strict policy of providing *no* dental care to the CENTRAL inmates. DOES 1-10 responded to Plaintiff's written and oral requests for medical and dental care with the response that the COUNTY has no funding for dental care and that *no* dental care would be provided.

32. A reasonable nurse, physician, and dentist would all have appreciated the high degree of risk that Plaintiff's uncontrolled dental abscess and infection would lead to more serious medical conditions, including the infection of Plaintiff's organs (including his heart, lungs, and brain) through process of hematogenous spread.

33. Defendant DOES 1-10's intentional decision to provide Plaintiff no dental care put Plaintiff at substantial risk for suffering serious harm.

34. The consequences of not treating Plaintiffs' abscess and infection were obvious to DOES 1-10. Nevertheless, DOES 1-10 ignored their medical training, ethical duties to care for those in need, and Plaintiff's obvious serious condition and, instead, decided to follow the COUNTY's policy of providing **no** "dental" care.

35. In January and February, Defendants DOES 1-10 did not take the reasonable available measure of sending Plaintiff out to a dentist to have the infected teeth removed and the abscess treated. A reasonable nurse, physician, and dentist all would have sent Plaintiff out to a dentist to have the infected teeth removed and the abscess treated.

36.	As a proximate result of DOES 1-10 not taking reasonable available measures to treat Plaintiff's abscess and infection, the uncontrolled bacterial infection in Plaintiff's mouth traveled to his thalamus via hematogenous spread and caused a thalamic (brain) abscess.

37.	By February 2024, Plaintiff's dental abscess began to drain pus into his mouth, causing a foul odor that was noticeable to all, including other inmates.

38.	By March 2024, the abscess and infection were causing Plaintiff debilitating head aches and dizziness.  As a result, Plaintiff missed numerous days at the cafeteria where he worked as a server.  He was called into the kitchen office three times for missing work, and he explained that he was dizzy and did not feel well.

39.	Plaintiff's dental and head pain radiated to his ears.  In response to his complaints of severe head and ear pain, Defendant DOE 1, a CHS nurse, prescribed Plaintiff a two-week regimen of ear drops.  DOE 1, however, made the deliberate decision not to treat the source of the pain (the dental abscess and infection) while appreciating the high degree of risk involved in not treating the bacterial infection.

40.	Plaintiff continued to make written and oral requests in March 2024 for medical and dental care, but the CHS nurses (DOES 1-10) repeatedly told him that the COUNTY has no funding for dental care.

41.	As March progressed, Plaintiff's dizziness became so severe that Defendant DOES 11-20, the deputies and custodial staff in Plaintiff's housing unit, held onto his arm to prevent him from falling.

42.	On one occasion, Plaintiff fell while in the shower and in the presence of Defendant deputies DOES 11-12.  Plaintiff told the deputies that he did not feel well.  Instead of summoning medical care, DOES 11-12 told Plaintiff that he needed to go to work (in the cafeteria) or be fired.

43.	In the middle of March, the debilitating pain caused Plaintiff to become desperate.  He submitted three written requests to DOES 1-10 for medical and dental care in a single day.  DOES 1-10 (CHS nurses) continued to respond that there was no

funding for dental care.  Plaintiff argued that his "dental" problem had become a serious medical condition requiring immediate care.

44.     Plaintiff's dizziness, and then confusion, became so severe in mid March that Plaintiff had difficulty finding his bunk.  Defendant deputies DOES 11-20 in Plaintiff's housing unit observed that he was having difficulty finding his bunk.

45.     Nevertheless, DOES 11-20 made the intentional decision not to refer Plaintiff to the CHS staff even though a reasonable deputy or custodial staff member would have appreciated the likelihood that Plaintiff suffered from a serious medical condition and that there was a high degree of risk associated with not treating the condition.

46.     The decisions of DOES 11-20 to not refer Plaintiff to the CHS staff put Plaintiff at substantial risk of suffering serious harm.

47.     On or about March 19, 2024, Plaintiff collapsed onto the floor and lost consciousness.  The inmates nearby summoned two deputies.  The deputies put Plaintiff into a wheelchair and took him to a medical station.  The CHS staff at the medical station, DOES 1-10, refused to treat him.

48.     Plaintiff is informed and believes and thereon alleges that he laid unconscious in his cell from late March 19 into March 21.

49.     Plaintiff is informed and believes and thereon alleges that on or about March 21, 2024, he was taken to the Emergency Department at the University of California, Irvine Medical Center.

50.     Plaintiff is informed and believes and thereon alleges that at the UCI Medical Center, the physicians discovered that the untreated dental abscess had caused a thalamic (brain) abscess through the process of hematogenous spread.

51.     Defendant DOES 1-20's intentional decisions not to take the reasonable available measure of sending Plaintiff out to a dentist to treat the abscess put Plaintiff at substantial risk of suffering serious harm.  A reasonable person would have appreciated the high degree of risk involving in ***not*** treating a dental abscess and bacterial infection.

52.     By intentionally deciding not to treat Plaintiff's abscess and bacterial infection over three months, DOES 1-20 caused Plaintiff's thalamus (brain) infection, encephalomalacia, and paralysis.

53.     The conduct of DOES 1-20 was intentional, malicious, oppressive, and in reckless disregard of Plaintiff's constitutional rights, health, and safety and, therefore, warrants the imposition of punitive and exemplary damages.

## II.

## SECOND CAUSE OF ACTION

## VIOLATION OF FOURTEENTH AMENDMENT—*Monell*

## POLICY OF PROVIDING NO DENTAL CARE

### [42 U.S.C. § 1983]

(By Plaintifff Against COUNTY)

54.     Plaintiff incorporates by reference paragraphs 1-25 as though fully set forth herein.

55.     In January 2024, Plaintiff was on parole and arrested for missing appointments with his probation officer.  He was taken to the CENTRAL jail in Santa Ana.

56.     As a pretrial detainee, Plaintiff had a Fourteenth Amendment right to adequate medical treatment while incarcerated at the CENTRAL jail.

57.     In consideration of the large number of Orange County jail inmates requiring significant dental work, and the high costs of providing such care, Sheriff BARNES, Commander TAYLOR, and the COUNTY adopted a strict policy of not providing any "dental" care in its jails, not hiring dental-care professionals, and not sending inmates out for dental care.

58.     The COUNTY adopted its strict (categorical) policy of providing *no* "dental" care to inmates for its ease of implementation and to save millions of dollars each year.

- 9 -
COMPLAINT

59. In adopting its policy, the COUNTY was aware that untreated infections, abscesses, and periodontal disease can cause serious or life-threatening medical problems when the untreated infections allow bacteria to enter the bloodstream and spread to the vital organs.

60. The COUNTY also recognized that a strict policy of providing absolutely no "dental" care could cause serious or life-threatening *medical* conditions.

61. With deliberate disregard for the constitutional rights COUNTY inmates have to receive adequate medical treatment while incarcerated at the CENTRAL jail, the COUNTY adopted its strict policy of providing *no* "dental" care in its jails.

62. This policy amounts to deliberate indifference to the constitutional right pretrial detainees have for adequate medical care while incarcerated at CENTRAL jail.

63. In January and February 2024, while incarcerated at the CENTRAL jail, Plaintiff suffered increasing oral and head pain caused by a dental abscess. He made multiple written and oral requests for medical and dental care over this period.

64. Defendant DOES 1-10 (COUNTY CHS nurses responsible for Plaintiff's health care) were aware that Plaintiff was suffering a dental abscess and bacterial infection.

65. Nevertheless, consistent with the COUNTY policy of providing *no* "dental" care in the jails, DOES 1-10 refused Plaintiff's requests for medical and dental care with the response that the COUNTY has no funding for dental care and that *no* dental care is provided to inmates.

66. By February 2024, Plaintiff's dental abscess began to drain pus into his mouth, causing a foul odor that was noticeable to all, including other inmates.

67. In March 2024, the abscess and bacterial infection caused Plaintiff debilitating head aches and dizziness. As a result, Plaintiff missed numerous days at the cafeteria where he worked as a server.

68. Plaintiff's dental and head pain radiated to his ears. In response to his complaints of severe head and ear pain, Defendant DOE 1, a CHS nurse, prescribed

Plaintiff a two-week regimen of ear drops. Such treatment was permitted because ear drops are not banned by the COUNTY's policy of providing *no* "dental" care.

69.    Plaintiff continued to make written and oral requests in March 2024 for medical and dental care, but the CHS nurses (DOES 1-10) repeatedly told him that the COUNTY has no funding for dental care.

70.    As March progressed, Plaintiff's dizziness became so severe that Defendant DOES 11-20, the deputies and custodial staff in Plaintiff's housing unit, held onto his arm to prevent him from falling.

71.    In the middle of March, the debilitating pain caused Plaintiff to become desperate.  He submitted three written requests to DOES 1-10 for medical and dental care in a single day.  Consistent with the COUNTY's policy of providing *no* dental care to inmates, DOES 1-10 responded that there was no funding for dental care.  Plaintiff argued that his "dental" problem had become a serious medical condition requiring immediate care.

72.    The COUNTY's policy of providing *no* dental care to inmates was the driving force in causing DOES 1-10 to refuse care for Plaintiff's dental abscess and resulting bacterial infection.  DOES 1-10 were willing to treat Plaintiff's ears with ear drops, but were barred from treating "dental" problems.  If the policy had not been in place, CHS staff members could have inspected Plaintiff's mouth, identified the abscess and infection, and started treatment with antibiotics.

73.    As a proximate result of the COUNTY's policy of providing *no* dental care to inmates, Plaintiff was denied adequate medical care and his untreated dental abscess and bacterial infection were permitted to spread bacteria throughout his body for three months via hematogenous spread, causing a thalamic (brain) abscess and paralysis.

///

///

COMPLAINT

## III.

## THIRD CAUSE OF ACTION

## VIOLATION OF FOURTEENTH AMENDMENT—*Monell*

## POLICY OF INACTION

## [42 U.S.C. § 1983]

(By Plaintifff Against COUNTY)

74. Plaintiff incorporates by reference paragraphs 1-25 as though fully set forth herein.

75. For many years, the COUNTY has maintained a strict (categorical) policy of providing *no* dental care to inmates, including *no* dental examinations.

76. The COUNTY adopted this strict (categorical) policy for its ease of implementation and to save millions of dollars each year.

77. In the last 10 years, however, following the discovery of oral bacteria in human hearts, lungs, and brains, researchers have studied *hematogenous spread*, or the spread of bacteria through the bloodstream. This research has found that untreated dental abscesses and periodontal disease can spread harmful bacteria to the vital organs and cause serious and life-threatening problems.

78. Plaintiff is informed and believes and thereon alleges that, as COUNTY inmates often have poor dental and oral health, COUNTY CHS physicians have studied the COUNTY's medical-history database and found numerous cases of suspected *hematogenous spread* and resulting serious and life-threatening medical problems.

79. Plaintiff is informed and believes and thereon alleges that as a result, COUNTY CHS physicians have urged the COUNTY to revise its strict (categorical) policy of prohibiting *all* dental examinations in COUNTY jails to permit oral examinations upon complaints of suspected dental abscesses. The physicians further warned the COUNTY that the failure to permit oral examinations upon complaints of suspected dental abscesses could result in serious and life-threatening medical injuries.

-12-

COMPLAINT

80.     The COUNTY, however, with deliberate indifference to inmates' constitutional right to adequate medical care, has refused to modify its strict (categorical) policy of providing *no* dental care to inmates.

81.     The COUNTY has maintained this policy of inaction with knowledge that, if the strict (categorical) policy is not changed, its inmates will continue to suffer serious and life-threatening medical problems caused by hematogenous spread of oral bacteria and result in unconstitutional denials of adequate medical care.

82.     Indeed, Plaintiff's case demonstrates the dangers caused by the COUNTY's strict (categorical) policy of providing *no* dental care to inmates.

83.     Plaintiff suffered from a dental abscess from January 2024 through most of March 2024 and made numerous written and oral requests for medical and dental care. The CHS nurses (DOES 1-10) refused these requests on the ground that, consistent with the COUNTY policy of providing *no* dental care in the jails, the COUNTY did not fund dental care.

84.     In February, the abscess began to drain pus into his mouth and cause a foul odor that was noticable to all, including other inmates.

85.     By March 2024, the abscess and bacterial infection were causing Plaintiff debilitating head aches and dizziness. His dizziness was so severe that the deputies and custodial staff in his housing unit held onto his arm to prevent him from falling.

86.     Defendant DOES 1-10 knew that Plaintiff was suffering from an oral infection, but were barred from treating it by the COUNTY's strict policy of providing *no* dental care.

87.     On or about March 19, 2024, Plaintiff collapsed onto the floor and lost consciousness. The inmates nearby summoned two deputies. The deputies put Plaintiff into a wheelchair and took him to a medical station. The CHS staff, DOES 1-10, at the medical station refused to treat him because the COUNTY's policy is to provide *no* dental care.

-13-
COMPLAINT

88.    The refusal of the COUNTY to revise its strict (categorical) policy of providing *no* dental care and *no* dental examinations was the moving force and cause of Plaintiff's thalamic abscess, encephalomalacia, and paralysis.

89.    All of these injuries could have been prevented by a minor modification of the COUNTY's dental policy to permit dental examinations upon complaints of oral infections and abscesses.  The CHS staff knew that Plaintiff had an oral infection for much of January through March 2024 and were willing to help as shown by the prescription for ear drops.  But the CHS staff believed the COUNTY's policy prevented them from gazing into and venturing into Plaintiff's mouth.

### IV.

### FOURTH CAUSE OF ACTION

### FAILURE TO SUMMON MEDICAL CARE

### [Cal. Government Code § 845.6]

(By Plaintiff Against COUNTY and DOES 1-20)

90.    Plaintiff incorporates by reference paragraphs 1-25 as though fully set forth herein.

91.    In January 2024, Plaintiff was on parole and arrested for missing appointments with his probation officer.  He was taken to the CENTRAL jail in Santa Ana.

92.    As a pretrail detainee, Plaintiff had a Fourteenth Amendment right to adequate medical treatment while incarcerated at the CENTRAL jail.

93.    In January and February 2024, Plaintiff suffered increasing oral and head pain caused by a dental abscess.  He made multiple written and oral requests for medical and dental care over this period.

94.    Defendant DOES 1-10 (COUNTY CHS nurses responsible for Plaintiff's health care) were aware that Plaintiff was suffering a dental abscess and bacterial infection.

COMPLAINT

95. Nevertheless, with deliberate indifference to Plaintiff's condition, DOES 1-10 made the decision to provide Plaintiff no dental care, consistent with the COUNTY's strict policy of providing *no* dental care to the CENTRAL inmates. DOES 1-10 responded to Plaintiff's written and oral requests for medical and dental care with the response that the COUNTY has no funding for dental care and that no dental care would be provided.

96. By February 2024, Plaintiff's dental abscess began to drain pus into his mouth, causing a foul odor that was noticeable to all, including Defendant DOES 1-20 and other inmates. As a consequence of Plaintiff's symptoms, Defendant DOES 1-10 knew that Plaintiff was suffering from a dental abscess and infection.

97. By March 2024, the abscess and bacterial infection were causing Plaintiff debilitating head aches and dizziness. The dizziness became so severe that the deputies and custodial staff in Plaintiff's housing unit held onto his arm to prevent him from falling.

98. On one occasion in March, Plaintiff fell while in the shower and in the presence of Defendant deputies DOES 11-12. Plaintiff told the deputies that he did not feel well. Instead of summoning medical care, DOES 11-12 told Plaintiff that he needed to go to work (in the cafeteria) or be fired.

99. DOES 11-20 knew that Plaintiff had been suffering an untreated dental abscess and infection since January 2024. With the onset of severe dizziness and the fall, DOES 11-20 knew that Plaintiff was suffering from a serious medical condition and required immediate care.

100. DOES 11-20, nevertheless, failed to summon medical care.

101. In the middle of March, the debilitating pain caused Plaintiff to become desperate. He submitted three written requests to DOES 1-10 (CHS nurses) for medical and dental care in a single day. DOES 1-10 continued to respond that there was no funding for dental care.

102. Plaintiff's dizziness, and then confusion, became so severe in March that Plaintiff had difficulty finding his bunk. Although Defendant deputies DOES 11-20 in Plaintiff's housing unit observed that he was having difficulty finding his bunk, none of these deputies reported his dizziness and confusion to CHS.

103. On or about March 19, 2024, Plaintiff collapsed onto the floor and lost consciousness. The inmates nearby summoned two deputies. The deputies put Plaintiff into a wheelchair and took him to a medical station. The CHS staff at the medical station, DOES 1-10, knew Plaintiff well and were aware of his suffering and untreated dental abscess and infection since January 2024.

104. In light of the untreated abscess and infection, and the new symptoms of dizziness and confusion, DOES 1-10 knew that Plaintiff could be experiencing the onset of sepsis, needed immediate medical care, and could die in a matter of days.

105. Nevertheless, DOES 1-10 unreasonably decided not to summon a medical doctor or to send Plaintiff to a hospital.

106. As a proximate result of DOES 1-20 unreasonable refusal to summon care, Plaintiff suffered serious injuries.

107. COUNTY is vicariously liable for the acts of its employees acting within the scope of their employment pursuant to *Government Code* sections 815.2 and 845.6.

### V.

### FIFTH CAUSE OF ACTION

### FAILURE TO PERFORM REQUIRED SAFETY CHECKS

### [42 U.S.C. § 1983]

108. Plaintiff incorporates by reference paragraphs 1-25 as though fully set forth herein.

109. In January 2024, Plaintiff was on parole and arrested for missing appointments with his probation officer. He was taken to the CENTRAL jail in Santa Ana.

COMPLAINT

110. As a pretrail detainee, Plaintiff had a Fourteenth Amendment right to adequate medical treatment while incarcerated at the CENTRAL jail.

111. Periodic *safety checks* are essential to the overall safety and welfare of inmates, particularly those with medical concerns. Title 15, California Code of Regulations, section 1006 defines *safety checks* to mean "***direct, visual*** observation performed at random intervals within timeframes prescribed in these regulations to provide for the health and welfare of incarcerated people."

112. Title 15, California Code of Regulations, section 1027.5 states:

(a) Safety checks will determine the safety and well-being of individuals and shall be conducted at least hourly through ***direct visual*** observation of all people held and housed in the facility.

(b) There shall be no more than a 60-minute lapse between safety checks.

.
.
.

(e) There shall be a written plan that includes the documentation of all safety checks.

15 CCR § 1027.5.

113. As a pretrial detainee, Plaintiff had a constitutional right to direct-view safety checks sufficient to determine whether his presentation indicated the need for medical treatment. *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).

114. In January 2024, while incarcerated at CENTRAL jail, Plaintiff began to feel the effects of a dental abscess and infection. He made multiple written and oral requests for medical and dental care in January and February. Defendant DOES 1-10 (CHS nurses) refused these requests on the ground that, consistent with the COUNTY policy of providing ***no*** dental care in the jails, the COUNTY did not fund dental care.

115. By February 2024, Plaintiff's dental abscess began to drain pus into his mouth, causing a foul odor that was noticeable to all, including other inmates.

116. By March 2024, the abscess and bacterial infection were causing Plaintiff debilitating head aches and dizziness.

117.    As March progressed, Plaintiff's dizziness became so severe that he was deemed a severe fall risk.  Defendant DOES 11-20, the deputies and custodial staff in Plaintiff's housing unit, held onto his arm to prevent him from falling.

118.    On one occasion, Plaintiff fell while in the shower and in the presence of Defendant deputies DOES 11-12.

119.    Plaintiff's dizziness, and then confusion, became so severe that Defendant deputies DOES 11-20 in Plaintiff's housing unit observed that he was having difficulty finding his bunk.

120.    On or about March 19, 2024, Plaintiff collapsed onto the floor and lost consciousness.  The inmates nearby summoned two deputies.  The deputies put Plaintiff into a wheelchair and took him to a medical station.  The CHS staff at the medical station, DOES 1-10, refused to treat Plaintiff.

121.    Given his extreme dizziness, confusion, and propensity for falling, hourly direct-view safety checks were necessary to ensure that Plaintiff had not fallen and hit his head on a hard object.

122.    It was foreseeable that Plaintiff would fall and sustain injuries and lie on the floor for hours if direct-visual safety checks were not performed.

123.    Nevertheless, with deliberate indifference to Plaintiff's safety, DOES 11-20 performed few or no direct, visual safety checks of Plaintiff in the third week of March 2024 to check on his health and well-being.

124.    Plaintiff is informed and believes and thereon alleges that after collapsing onto the floor and losing consciousness on March 19, 2024, Plaintiff was returned to his cell and laid unconscious for two days without any direct, visual safety checks or medical care.

125.    As a proximate result of not receiving any medical care for two days after collapsing and losing consciousness on March 19, Plaintiff sustained severe brain injuries.

## VI.

## SIXTH CAUSE OF ACTION

## <u>NEGLIGENCE</u>

(By Plaintifff Against COUNTY and DOES 1-20)

126.   Plaintiff incorporates by reference paragraphs 1-25 as though fully set forth herein.

127.   In January 2024, Plaintiff was on parole and arrested for missing appointments with his probation officer.  He was taken to the CENTRAL jail in Santa Ana.

128.   As a consequence of the "special relationship" jailers have to their prisoners, Defendant DOES 1-20 owed a legal duty of care to protect Plaintiff against unreasonable risk of harm.  *Giraldo v. Department of Corrections & Rehabilitation*, 168 Cal.App.4th 231 (2008).

129.   In January and February 2024, while incarcerated at the CENTRAL jail, Plaintiff suffered increasing oral and head pain caused by a dental abscess.  He made multiple written and oral requests for medical and dental care over this period.  Acting within the scope of their employment as CHS nurses, and consistent with the COUNTY's policy of providing ***no*** dental care to inmates, Defendants 1-10 responded that the COUNTY has no funding for dental care.

130.   By February 2024, Plaintiff's dental abscess began to drain pus into his mouth, causing a foul odor that was noticeable to all, including other inmates.  In breach of their legal duties of care owed to Plaintiff, Defendants DOES 1-20, acting within the scope of their employment as deputies, custodial staff, and CHS nurses, and consistent with the COUNTY's policy of providing ***no*** dental care to inmates, did not report Plaintiff's uncontrolled infection to CHS.

131.   In March 2024, the dental absence and bacterial infection caused Plaintiff debilitating head aches and dizziness.  The dizziness became so severe that Defendant deputies DOES 11-20 held onto Plaintiff's arm to prevent him from falling.  In breach

-19-
COMPLAINT

of their legal duties of care owed to Plaintiff, DOES 11-20 did not report Plaintiff's dizziness to the CHS.

132. On one occasion, Plaintiff fell in the shower in the presence of deputies DOES 11-12. In breach of their legal duties of care owed to Plaintiff, DOES 11-12 did not report Plaintiff's fall or dizziness to CHS or summon medical care.

133. In the middle of March, the debilitating pain caused Plaintiff to become desperate. He submitted three written requests for medical and dental care in a single day. In breach of their duties of care owed to Plaintiff, Defendant DOES 1-10, acting within the scope of their employment as CHS nurses and consistent with the COUNTY policy of providing *no* dental care to inmates, refused treatment and represented to Plaintiff that the County had no funding for dental care.

134. Plaintiff's dizziness, and then confusion, became so severe in March that he was having difficulty finding his bunk. Although Defendant deputies DOES 11-20 in Plaintiff's housing unit observed that he was having difficulty finding his bunk, in breach of their duties of care owed to Plaintiff, none of these deputies reported his dizziness and confusion to CHS.

135. On or about March 19, 2024, Plaintiff collapsed onto the floor and lost consciousness. The innates summoned two deputies. The deputies put Plaintiff into a wheelchair and took him to a medical station. In breach of their legal duties of care owed to Plaintiff, DOES 1-10 refused to treat Plaintiff.

136. As a proximate result of the breaches of the legal duty of care Defendants 1-20 owed to Plaintiff, the untreated dental abscess and bacterial infection lead caused a thalamic (brain) abscess through the process of hematogenous spread.

137. As a further proximate result of Defendants' breaches, Plaintiff suffered encephalomalacia (loss of brain tissue) at the right thalamus and paralysis on the left side of his body.

138. COUNTY is vicariously liable for the acts of its employees acting within the scope of their employment pursuant to *Government Code* section 815.2.

# VII.

## SEVENTH CAUSE OF ACTION

### THE BANE ACT

(By Plaintifff Against COUNTY and DOES 1-20)

139. Plaintiff incorporates by reference paragraphs 1-25 as though fully set forth herein.

140. In January 2024, Plaintiff was on parole and arrested for missing appointments with his probation officer. He was taken to the CENTRAL jail in Santa Ana.

141. As a pretrail detainee, Plaintiff had a Fourteenth Amendment right to adequate medical treatment while incarcerated at the CENTRAL jail.

142. In January and February 2024, Plaintiff suffered increasing oral and head pain caused by a dental abscess and infection. He made multiple written and oral requests for medical and dental care over this period.

143. Defendant DOES 1-10 (COUNTY CHS nurses responsible for Plaintiff's health care) were aware that Plaintiff was suffering a dental abscess and bacterial infection.

144. Nevertheless, with deliberate indifference to Plaintiff's condition, DOES 1-10 made the decision to provide Plaintiff no dental care, consistent with the COUNTY's strict policy of providing *no* dental care to the CENTRAL inmates. DOES 1-10 responded to Plaintiff's written and oral requests for medical and dental care with the response that the COUNTY has no funding for dental care and that *no* dental care would be provided. *See Cravotta v. County of Sacramento,* 717 F.Supp.3d 941, 964 (" 'a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs . . . adequately states a claim for relief under the Bane Act' because deliberate indifference claims extend far beyond ordinary tort claims and have been 'associated with affirmatively culpable conduct.' ").

145. A reasonable nurse, physician, and dentist would all have appreciated the high degree of risk that Plaintiff's uncontrolled dental abscess and infection would lead to more serious medical conditions, including the infection of Plaintiff's organs (including his heart, lungs, and brain) with his oral bacteria through the process of hematogenous spread.

146. Defendant DOES 1-10's intentional decision to provide Plaintiff no dental care put Plaintiff at substantial risk of suffering serious harm.

147. The consequences of not treating Plaintiffs' abscess and infection were obvious to DOES 1-10. Nevertheless, DOES 1-10 ignored their medical training, ethical duties to care for those in need, and Plaintiff's obvious serious condition and, instead, decided to follow the COUNTY's policy of providing **no** "dental" care.

148. In January and February, Defendants DOES 1-10 did not take the reasonable available measure of sending Plaintiff out to a dentist to have the infected teeth removed and the abscess treated.

149. A reasonable nurse, physician, and dentist all would have sent Plaintiff out to a dentist to have the infected teeth removed and the abscess treated.

150. As a proximate result of DOES 1-10 not taking reasonable available measures to treat Plaintiffs abscess and infection, the uncontrolled bacterial infection in Plaintiff's mouth traveled to his thalamus via hematogenous spread and caused a thalamic (brain) abscess.

151. By February 2024, Plaintiff's dental abscess began to drain pus into his mouth, causing a foul odor that was noticeable to all, including other inmates.

152. By March 2024, the abscess and bacterial infection were causing Plaintiff debilitating head aches and dizziness. As a result, Plaintiff missed numerous days at the cafeteria where he worked as a server.

153. Plaintiff continued to make written and oral requests in March 2024 for medical and dental care, but the CHS nurses (DOES 1-10) continued to tell him that the COUNTY has no funding for dental care.

-22-

COMPLAINT

154.    As March progressed, Plaintiff's dizziness became so severe that Defendant DOES 11-20, the deputies and custodial staff in Plaintiff's housing unit, held onto his arm to prevent him from falling.

155.    On one occasion, Plaintiff fell while in the shower and in the presence of Defendant deputies DOES 11-12.  Plaintiff told the deputies that he did not feel well.  Instead of summoning medical care, DOES 11-12 told Plaintiff that he needed to go to work (in the cafeteria) or be fired.  Plaintiff, therefore, went to work at the cafeteria even though his head was spinning and he was hurting from the fall.  DOES 11-12 did not render any medical aid to Plaintiff, did not transport Plaintiff to a medical station, or even report Plaintiff's dizziness and fall to CHS.

156.    In the middle of March, the debilitating pain caused Plaintiff to become desperate.  He submitted three written requests to DOES 1-10 for medical and dental care in a single day.  DOES 1-10 (CHS nurses) continued to respond that there was no funding for dental care.  Plaintiff argued that his "dental" problem had become a serious medical condition requiring immediate care.

157.    Plaintiff's dizziness, and then confusion, became so severe that Plaintiff had difficulty finding his bunk.  Defendant deputies DOES 11-20 in Plaintiff's housing unit observed that he was extremely dizzy, confused, and having difficulty finding his bunk.

158.    Nevertheless, DOES 11-20 made the intentional decision not to refer Plaintiff to the CHS staff even though a reasonable deputy or custodial staff member would have appreciated the likelihood that Plaintiff suffered from a serious medical condition and that there was a high degree of risk associated with not treating the condition.

159.    The decisions of DOES 1-10 to refuse care for Plaintiff's dental abscess and infection, the decisions of DOES 11-20 to not refer Plaintiff to the CHS staff, and the threats of DOES 11-20 that Plaintiff must continue working at the cafeteria or be fired put Plaintiff at substantial risk of suffering serious harm.

COMPLAINT

160. Plaintiff is informed and believes that on or about March 19, 2024, he collapsed onto the floor and lost consciousness. Plaintiff is informed and believes and thereon alleges that he laid unconscious in his cell until March 21, 2024, when he was taken to the Emergency Department at the University of California, Irvine Medical Center.

161. Plaintiff is informed and believes and thereon alleges that at the UCI Medical Center, the physicians discovered that the untreated dental abscess had caused a thalamic (brain) abscess through the process of hematogenous spread.

162. Defendant DOES 1-20's intentional decisions not to take the reasonable available measure of sending Plaintiff out to a dentist to treat the abscess put Plaintiff at substantial risk of suffering serious harm. A reasonable person would have appreciated the high degree of risk involving in *not* treating a dental abscess and bacterial infection.

163. By intentionally deciding not to treat Plaintiff's abscess and bacterial infection over three months, DOES 1-20 caused Plaintiff's thalamus (brain) infection, encephalomalacia, and paralysis.

164. The conduct of DOES 1-20 was intentional, malicious, oppressive, and in reckless disregard of Plaintiff's constitutional rights, health, and safety and, therefore, warrants the imposition of punitive and exemplary damages.

**ON THE FIRST CAUSE OF ACTION (FAILURE TO PROVIDE MEDICAL CARE [42 U.S.C. § 1983])**

1. For general and special damages;

2. For exemplary and punitive damages;

3. For attorney's fees pursuant to 42 U.S.C. § 1988;

4. For costs of suit; and

5. For such other and further relief as the court may deem proper.

**ON THE SECOND CAUSE OF ACTION (*Monell*—POLICY OF PROVIDING NO DENTAL CARE [42 U.S.C. § 1983])**

6. For general and special damages;

7. For attorney's fees pursuant to 42 U.S.C. § 1988;

8. For costs of suit; and

9. For such other and further relief as the court may deem proper.

**ON THE THIRD CAUSE OF ACTION (*Monell*—POLICY OF INACTION [42 U.S.C. § 1983]**

10. For general and special damages;

11. For attorney's fees pursuant to 42 U.S.C. § 1988;

12. For costs of suit; and

13. For such other and further relief as the court may deem proper.

**ON THE FOURTH CAUSE OF ACTION (FAILURE TO SUMMON MEDICAL CARE [Cal. Government Code § 845,6]**

14. For general and special damages;

15. For costs of suit; and

16. For such other and further relief as the court may deem proper.

**ON THE FIFTH CAUSE OF ACTION (FAILURE TO PERFORM REQUIRED SAFETY CHECKS [42 U.S.C. § 1983]**

17. For general and special damages;

18. For attorney's fees pursuant to 42 U.S.C. § 1988;

19. For costs of suit; and

20. For such other and further relief as the court may deem proper.

**ON THE SIXTH CAUSE OF ACTION (NEGLIGENCE)**

21. For general and special damages;

22. For costs of suit; and

23. For such other and further relief as the court may deem proper.

**ON THE SEVENTH CAUSE OF ACTION (BANE ACT [CIVIL CODE § 52.1])**

24. For statutory damages;

25. For exemplary and punitive damages;

26. For attorney fees pursuant to *Civil Code* § 52.1(i);

COMPLAINT

27.     For costs of suit; and

28.     For such other and further relief as the court may deem proper.

SKAPIK LAW GROUP

Dated: August 28, 2025                              By: _____
                                                    Blair J. Berkley
                                                    Attorneys for Plaintiff
                                                    SAMUEL DAVID PEREZ

-26-
COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

SKAPIK LAW GROUP

Dated: August 28, 2025                    By: _____
                                          Blair J. Berkley
                                          Attorneys for Plaintiff
                                          SAMUEL DAVID PEREZ

-27-
COMPLAINT